# EXHIBIT C

Westlaw.

158 F.R.D. 555
158 F.R.D. 555, 31 Fed.R.Serv.3d 602

Page 1

▷ Riddell Sports Inc. v. Brooks
S.D.N.Y.,1994.

United States District Court,S.D. New York.
RIDDELL SPORTS INC., Plaintiff,
v.
Frederic H. BROOKS, Defendant.
Frederic H. BROOKS and Connecticut Economics Corporation, Counterplaintiffs,
v.
RIDDELL SPORTS INC., Riddell, Inc., Equilink Licensing Corporation, RHC Licensing Corporation, M.L.C. Partners Limited Partnership, Robert Nederlander and Leonard Toboroff, Counterdefendants.
Frederic H. BROOKS, Defendant and Third-Party Plaintiff,
v.
PURSUIT ATHLETIC FOOTWEAR, INC., Riddell Athletic Footwear, Inc., Woodco Sports, Inc., Ernest Wood, Jr., Harry Wood and Arthur Tse, Third-Party Defendants.
No. 92 Civ. 7851 (PKL).

Nov. 8, 1994.

In suit by corporation against former president and consultant alleging breach of contractual obligations and fiduciary duty, discovery disputes were presented. The District Court, Francis, United States Magistrate Judge, held that: (1) fact that information is publicly available does not place it beyond the bounds of proper deposition; (2) attorney's directing deponents not to answer certain questions is generally inappropriate, except under limited circumstances; (3) party resisting discovery has burden of supporting its position, whether deponent moves for protective order or declines to answer and then waits to defend motion to compel; (4) producing party is deemed to have "control" of documents which it has legal right or practical ability to obtain, even if they are in possession of nonparty; (5) corporate party may be compelled to produce items in possession of one of its officers if created in officer's functions as a corporate officer; (6) transcription of tapes that were subject to disclosure was not work product; (7) party making transcription was not entitled to reimbursement for cost of original transcription, but only for creation of copies for production; (8) fact that certain theory of plaintiffs had not actually been pled was not fatal to its discovery demands; and (9) it was irrelevant that same discovery might have been stayed in an independent, if overlapping, action.

Ordered accordingly.

West Headnotes

[1] ⚷═1271.5

170A Federal Civil Procedure
  170AX Depositions and Discovery
    170AX(A) In General
      170Ak1271.5 k. Protective Orders. Most Cited Cases
(Formerly 170Ak1271)
Witness seeking to limit discovery must show that protective order is warranted.

[2] Federal Civil Procedure 170A ⚷═1405

170A Federal Civil Procedure
  170AX Depositions and Discovery
    170AX(C) Depositions of Parties and Others Pending Action
      170AX(C)4 Scope of Examination
        170Ak1405 k. Admitted Matters and Matters Already Known or Available. Most Cited Cases
There is no rule that deponent may be asked only about that which is within his exclusive knowledge; fact that information is publicly available does not place it beyond the bounds of proper deposition.

[3] Federal Civil Procedure 170A ⚷═1361

170A Federal Civil Procedure
  170AX Depositions and Discovery
    170AX(C) Depositions of Parties and Others Pending Action
      170AX(C)2 Proceedings
        170Ak1355 Orders for Protection of Parties and Deponents Before Oral Examination
          170Ak1361 k. Limiting Scope of Examination in General. Most Cited Cases

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

**Federal Civil Procedure 170A ⚖︎1368**

170A Federal Civil Procedure
    170AX Depositions and Discovery
        170AX(C) Depositions of Parties and Others Pending Action
            170AX(C)2 Proceedings
                170Ak1367 Terminating or Limiting Pending Oral Examination
                    170Ak1368 k. Bad Faith, Annoyance, Embarrassment or Oppression. Most Cited Cases

**Federal Civil Procedure 170A ⚖︎1414.1**

170A Federal Civil Procedure
    170AX Depositions and Discovery
        170AX(C) Depositions of Parties and Others Pending Action
            170AX(C)4 Scope of Examination
                170Ak1414 Privileged Matters
                    170Ak1414.1 k. In General. Most Cited Cases
Counsel may direct witness not to answer deposition question only under the following circumstances: when necessary to preserve privilege; to enforce limitation on evidence directed by the court; or to protect witness from examination being conducted in bad faith or in such a manner as unreasonably to annoy, embarrass or oppress the deponent or party. Fed.Rules Civ.Proc.Rule 30(d)(1, 3), 28 U.S.C.A.

**[4] Federal Civil Procedure 170A ⚖︎1366**

170A Federal Civil Procedure
    170AX Depositions and Discovery
        170AX(C) Depositions of Parties and Others Pending Action
            170AX(C)2 Proceedings
                170Ak1355 Orders for Protection of Parties and Deponents Before Oral Examination
                    170Ak1366 k. Motions for Protective Orders and Proceedings Thereon. Most Cited Cases
Regardless of whether deponent moves for protective order after attorney directs witness not to answer, or witness declines to answer and then waits to defend motion to compel, party resisting discovery has burden of supporting its position and award of reasonable expenses, including attorney fees, is available to party that prevails on the motion if adversary's position was not substantially justified. Fed.Rules Civ.Proc.Rules 26(c), 30(d), (d)(3), 37(a)(4), 28 U.S.C.A.

**[5] Federal Civil Procedure 170A ⚖︎1574**

170A Federal Civil Procedure
    170AX Depositions and Discovery
        170AX(E) Discovery and Production of Documents and Other Tangible Things
            170AX(E)2 Subject Matter in General
                170Ak1574 k. Existence, Possession, Custody, Control and Location. Most Cited Cases
If producing party has legal right or practical ability to obtain documents, it is deemed to have "control" within rule governing production of documents in control of party, even if documents are actually in the possession of a nonparty. Fed.Rules Civ.Proc.Rule 34(a), 28 U.S.C.A.

**[6] Federal Civil Procedure 170A ⚖︎1266**

170A Federal Civil Procedure
    170AX Depositions and Discovery
        170AX(A) In General
            170Ak1266 k. Persons Subject. Most Cited Cases

**Federal Civil Procedure 170A ⚖︎1555**

170A Federal Civil Procedure
    170AX Depositions and Discovery
        170AX(E) Discovery and Production of Documents and Other Tangible Things
            170AX(E)1 In General
                170Ak1555 k. Persons Subject. Most Cited Cases
Individual party to lawsuit can be compelled to produce relevant information and documents relating to nonparty corporation of which party is officer, director or shareholder. Fed.Rules Civ.Proc.Rule 34(a), 28 U.S.C.A.

**[7] Federal Civil Procedure 170A ⚖︎1588**

170A Federal Civil Procedure
    170AX Depositions and Discovery
        170AX(E) Discovery and Production of Documents and Other Tangible Things
            170AX(E)3 Particular Subject Matters

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

170Ak1588 k. Corporations, Records of in General. Most Cited Cases
Corporate party to lawsuit could be compelled to produce items in possession of one of its officers, where the items were tape recordings created by the officer in furtherance of his functions as a corporate officer; such tapes were within corporation's "control" and had to be disclosed in response to proper notice for production. Fed.Rules Civ.Proc.Rule 34(a), 28 U.S.C.A.

[8] Corporations 101 ⛉311

101 Corporations
    101X Officers and Agents
        101X(C) Rights, Duties, and Liabilities as to Corporation and Its Members
            101k311 k. Corporate Books and Records. Most Cited Cases
When documents are created by corporate officer in connection with officer's functions as corporate employee, corporation has proprietary interest in them and officer has fiduciary duty to turn them over on demand.

[9] Federal Civil Procedure 170A ⛉1600(3)

170A Federal Civil Procedure
    170AX Depositions and Discovery
        170AX(E) Discovery and Production of Documents and Other Tangible Things
            170AX(E)3 Particular Subject Matters
                170Ak1600 Privileged Matters in General
                    170Ak1600(3) k. Work Product of Attorney. Most Cited Cases
Under appropriate circumstances, tape recordings may be created in anticipation of litigation or in preparation for trial and so be exempt from disclosure under work product doctrine.

[10] Federal Civil Procedure 170A ⛉1600(3)

170A Federal Civil Procedure
    170AX Depositions and Discovery
        170AX(E) Discovery and Production of Documents and Other Tangible Things
            170AX(E)3 Particular Subject Matters
                170Ak1600 Privileged Matters in General
                    170Ak1600(3) k. Work Product of Attorney. Most Cited Cases
Where tape recordings were subject to disclosure, transcription of those tapes did not qualify as "work product."

[11] Federal Civil Procedure 170A ⛉1600(3)

170A Federal Civil Procedure
    170AX Depositions and Discovery
        170AX(E) Discovery and Production of Documents and Other Tangible Things
            170AX(E)3 Particular Subject Matters
                170Ak1600 Privileged Matters in General
                    170Ak1600(3) k. Work Product of Attorney. Most Cited Cases
Collection of evidence, without any creative or analytic input by attorney or his agent, does not qualify as "work product."

[12] Federal Civil Procedure 170A ⛉2740

170A Federal Civil Procedure
    170AXIX Fees and Costs
        170Ak2740 k. Stenographic Costs. Most Cited Cases
Where party sought production of transcription made by other party of tape recordings which were subject to disclosure, party which sought production would be required to pay for creation of copies but not for the cost of the original transcription.

[13] Federal Civil Procedure 170A ⛉2737.4

170A Federal Civil Procedure
    170AXIX Fees and Costs
        170Ak2737 Attorneys' Fees
            170Ak2737.4 k. Amount and Elements. Most Cited Cases

Federal Civil Procedure 170A ⛉2740

170A Federal Civil Procedure
    170AXIX Fees and Costs
        170Ak2740 k. Stenographic Costs. Most Cited Cases
Party that "piggybacks" on opponent's efforts to obtain evidence is not thereby liable for opposing counsel's fees for time expended in collecting the

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

evidence, and where party incurs expenses obtaining documents under its control but in actual possession of third parties, it is not entitled to compensation beyond the cost of creating a copy for the demanding party.

[14] Witnesses 410 ⇐ 201(1)

410 Witnesses
    410II Competency
        410II(D) Confidential Relations and Privileged Communications
            410k197 Communications to or Advice by Attorney or Counsel
                410k201 Subject-Matter of Communications or Advice in General
                    410k201(1) k. In General. Most Cited Cases

Witnesses 410 ⇐ 222

410 Witnesses
    410II Competency
        410II(D) Confidential Relations and Privileged Communications
            410k222 k. Evidence as to Nature and Circumstances of Communication or Other Subject-Matter. Most Cited Cases

Under federal common law as well as New York privilege rules, attorney fee arrangements, including general purpose of the work performed, are not generally protected from disclosure by attorney-client privilege, but correspondence, bills, ledgers, statements and time records which also reveal the motive of the client in seeking representation, litigation strategy, or the specific nature of the services provided fall within the privilege, with the burden of establishing that the privilege applies resting with the party asserting the privilege.

[15] Federal Courts 170B ⇐ 416

170B Federal Courts
    170BVI State Laws as Rules of Decision
        170BVI(C) Application to Particular Matters
            170Bk416 k. Evidence Law. Most Cited Cases

Where privilege question appeared to relate to substantive claims that would be decided under state law, state privilege principles would apply. Fed.Rules Evid.Rule 501, 28 U.S.C.A.

[16] Federal Civil Procedure 170A ⇐ 1617

170A Federal Civil Procedure
    170AX Depositions and Discovery
        170AX(E) Discovery and Production of Documents and Other Tangible Things
            170AX(E)4 Proceedings
                170Ak1615 Motion and Proceedings Thereon
                    170Ak1617 k. Relevancy and Materiality. Most Cited Cases

Fact that particular theory was not actually pled by plaintiff was not fatal to plaintiff's discovery demands concerning documents related to that theory, where the demands related to the general subject matter of the litigation and to specific claim that plaintiff might yet assert. Fed.Rules Civ.Proc.Rule 26(b)(1), 28 U.S.C.A.

[17] Federal Civil Procedure 170A ⇐ 1269.1

170A Federal Civil Procedure
    170AX Depositions and Discovery
        170AX(A) In General
            170Ak1269 Grounds and Objections
                170Ak1269.1 k. In General. Most Cited Cases

To extent that there is legitimate basis for pursuing discovery in one case, it is irrelevant that the same discovery may be stayed in an independent, if overlapping, action.

*557 Jeremy A. Berman, Skadden, Arps, Slate, Meagher & Flom, New York City, for Riddell.
David J. Molton and Susan Meekins, Molton & Meekins, New York City, for Brooks.
Allen G. Reiter, Siller, Wilk & Mencher, New York City, for third-party defendant.
John I. Karesh, Feltman, Karesh, Major & Farbman, New York City, for nonparty witness Robert D. Weisman.

*MEMORANDUM AND ORDER*

FRANCIS, United States Magistrate Judge.
This action involves conflict between Riddell Sports Inc. ("Riddell"), a manufacturer of football helmets and other sporting goods, and Frederic H. Brooks, formerly President of Riddell, then a consultant to that

company, and still later Chairman of MacGregor Sporting Goods ("MacGregor"). Riddell contends that Mr. Brooks violated his contractual obligations and fiduciary duty by utilizing confidential information in assisting other parties in litigation against Riddell. The parties have raised a number of discovery disputes, each of which will be addressed in turn.

*Nederlander and Toboroff Depositions*

Robert Nederlander and Leonard Toboroff are both officers and directors of Riddell against whom Mr. Brooks has asserted counterclaims. By order dated August 18, 1994, I set dates for the commencement of their depositions, and stated that "[i]f necessary, these depositions shall continue thereafter on dates agreeable to all counsel." Having deposed Mr. Nederlander and Mr. Toboroff for two days each, Mr. Brooks' attorney now seeks to schedule additional days for the continuation of these examinations. Riddell's counsel, construing my prior order as a limit on the number of days of deposition, asks that the questioning be halted.

[1][2] My earlier order was not intended to curtail these depositions after two days. Nor was it meant to impose on the deposing party any burden of justifying continuation of the depositions. A witness seeking to limit discovery must show that a protective order is warranted. See Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1121 (3d Cir.1986); Harris v. Wells, 137 F.R.D. 206, 208 (D.Conn.1991). Here, Riddell has not done so. Counsel for Riddell has pointed to a number of examples from each deposition that purportedly show that Mr. Brooks' attorney wasted time questioning the witnesses on irrelevant issues or seeking information available from public documents. After reviewing the transcript, I find no conduct by Mr. Brooks' counsel that would amount to harassment sufficient to justify halting the depositions. While not always a model of efficiency, the questioning dealt primarily with information that could lead to relevant evidence, including the usual background information about the witnesses. Furthermore, there is no rule that a deponent may only be asked about that which is within his exclusive knowledge; the fact that information is publicly available does not place it beyond the bounds of a proper deposition. Accordingly, I decline to terminate the depositions of Mr. Nederlander and Mr. Toboroff. They shall appear on dates agreed upon by counsel until the depositions are completed.

[3] Finally, in responding to Riddell's arguments on this issue, counsel for Mr. Brooks noted that Riddell's attorney had on several occasions directed the deponents not to answer certain questions. Such conduct is generally inappropriate. Counsel may direct the witness not to answer a deposition question only under the following circumstances: (1) "when necessary to preserve a privilege," (2) "to enforce a limitation on evidence directed by the court," or (3) to protect a witness from an examination "being conducted in bad faith or in such a manner as unreasonably to annoy, embarrass, or oppress the deponent or party." Fed.R.Civ.P. 30(d)(1) & (3).

*558 [4] There is some debate over the proper avenue for obtaining court review when an attorney does direct a witness not to answer. Several cases hold that the deponent then has an absolute duty to move for a protective order pursuant to Rules 26(c) and 30(d). See First Tennessee Bank v. Federal Deposit Insurance Corp., 108 F.R.D. 640, 641 (E.D.Tenn.1985); Paparelli v. Prudential Ins. Co., 108 F.R.D. 727, 731 (D.Mass.1985); American Hangar, Inc. v. Basic Line, Inc., 105 F.R.D. 173, 175 (D.Mass.1985). However, Rule 37(a)(2)(B) specifically contemplates a motion to compel when a deponent refuses to answer a question, thus suggesting that it is acceptable for the witness to decline to answer and then wait to defend such a motion. See 8 C. Wright & A. Miller, Federal Practice & Procedure § 2116, at 430 (1970). There is, in any event, little functional difference between the two courses of action, since in both cases the party resisting discovery has the burden of supporting its position, see Nestle Foods Corp. v. Aetna Casualty & Surety Co., 135 F.R.D. 101, 104, 112 (D.N.J.1990) (Rule 26(c)); Johnston Development Group, Inc. v. Carpenters Local Union No. 1578, 130 F.R.D. 348, 352-53 (D.N.J.1990) (Rule 26(c)); Scott v. Arex, Inc., 124 F.R.D. 39, 42 (D.Conn.1989) (Rule 37); Compagnie Francaise D'Assurance Pour Le Commerce Exterieur v. Phillips Petroleum Co., 105 F.R.D. 16, 42-43 (S.D.N.Y.1984) (Rule 37), and an award of reasonable expenses, including attorneys fees, is available to the party that prevails on the motion if his adversary's position was not substantially justified. See Fed.R.Civ.P. 37(a)(4) (sanctions on motion to compel); Fed.R.Civ.P. 30(d)(3) (making same sanctions applicable to motion for protective

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

order at deposition).

*Tape Recordings*

Counsel for Riddell is in possession of tape recordings made by an officer of Riddell identified as a Mr. Wingo of telephone conversations he had with Mr. Brooks. Seven tapes have been provided to Mr. Brooks' attorney. Mr. Brooks now seeks unedited versions of all tapes made by Mr. Wingo as well as transcripts of the recordings. In addition, Mr. Brooks seeks information regarding the dates that Riddell's counsel learned of the existence of the recordings, the dates and times of the conversations recorded, and the identities of the participants.

Riddell contends that the tapes are the personal property of Mr. Wingo and therefore should have been sought by subpoena served on him personally. Riddell further argues that the transcripts of the recordings constitutes work product, so that Mr. Brooks must create his own transcripts or at least agree to share the expenses of transcription. Riddell's counsel acknowledges that the tapes were edited, but he represents that they were submitted by Mr. Wingo in that condition. Finally, Riddell's attorney contends that any remaining inquiries about the tapes should be dealt with by deposing Mr. Wingo.

[5][6][7] Rule 34(a) of the Federal Rules of Civil Procedure provides that "any party" may request of "any other party" documents that are "in the possession, custody or control of the party upon whom the request is served." If the producing party has the legal right or the practical ability to obtain the documents, then it is deemed to have "control," even if the documents are actually in the possession of a non-party. See 4A J. Moore, *Moore's Federal Practice* ¶ 34.17, at 34-69-34-72 (1994); 8 C. Wright & A. Miller, *Federal Practice and Procedure* § 2210, at 621-24 (1970). The first issue here, then, is whether Riddell has control of the tapes created and possessed by Mr. Wingo. It is well-established that "[a]n individual party to a lawsuit can be compelled to produce relevant information and documents relating to a non-party corporation of which it is an officer, director or shareholder." *General Environmental Science Corp. v. Horsfall*, 136 F.R.D. 130, 133 (N.D.Ohio 1991); see also *A.F.L. Falck, S.p.A. v. E.A. Karay Co.*, 131 F.R.D. 46, 48-49 (S.D.N.Y.1990); *Scott*, 124 F.R.D. at 41; *Haseotes v. Abacab International Computers, Inc.*, 120 F.R.D. 12, 14 (D.Mass.1988). This case presents the mirror-image issue: whether a corporation that is a party to a lawsuit may be compelled to produce items in the possession of one of its officers.

*559 [8] The determination of this question must turn on the nature of the documents or things at issue. Where they were created in connection with the officer's functions as a corporate employee, the corporation has a proprietary interest in them and the officer has a fiduciary duty to turn them over on demand. See *In re Folding Carton Antitrust Litigation*, 76 F.R.D. 420, 423 & n. 2 (N.D.Ill.1977). The Second Circuit made this clear in the context of evaluating an assertion of the Fifth Amendment privilege against self-incrimination by a corporate officer served with a subpoena for corporate records:

[A corporation's] records are usually available to others within the entity and may not be treated as the private confidential papers of any one officer or employee. The officer creates or handles the records in a representative capacity, not on his own behalf. The records, moreover, do not belong to him but to the organization.

*In re Grand Jury Subpoenas Duces Tecum Dated June 13, 1983 and June 22, 1983*, 722 F.2d 981, 984 (2d Cir.1983). This same rationale applies with full force to civil discovery. Thus, the tapes created by Mr. Wingo, apparently in furtherance of his functions as a corporate officer, are within Riddell's control and must be disclosed in response to a proper notice for production.

[9] The second issue concerns the extent to which the transcripts of the recordings are subject to the work product doctrine. Under appropriate circumstances, tape recordings may be created in anticipation of litigation or in preparation for trial and so be exempt from disclosure. See *H.L. Hayden Co. v. Siemens Medical Systems, Inc.*, 108 F.R.D. 686, 690 (S.D.N.Y.1985). No such broad argument is being advanced here, however, as evidenced by the fact that Riddell has produced copies of the tapes themselves.

[10] Rather, Riddell argues that it is the act of transcription itself that is work product. Consequently, according to Riddell, while the tapes are subject to disclosure, the transcripts are not. As an alternative,

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Riddell contends that Mr. Brooks should be required to share the stenographic costs for any transcripts that are produced.

[11] But the collection of evidence, without any creative or analytic input by an attorney or his agent, does not qualify as work product.

The mere acquisition of documents from an unrelated third-party does not by itself impose upon them the status of work product. At its core, the work-product doctrine exists to shelter the attorney's preparation and analysis of the case. Even if the lawyer's synthesis of the documents were to constitute work product, the mere acquisition of such documents from a non-party does not create such a characteristic.

_Bohannon v. Honda Motor Co., 127 F.R.D. 536, 540 (D.Kan.1989)_ (citations omitted). The same is true of the transcription process: it is entirely devoid of analysis or synthesis and so is beyond the work product doctrine.

[12][13] Nor is there any inequity in denying Riddell reimbursement for the cost of transcription. Costs often fall fortuitously on the party that chooses to pursue discovery more vigorously. For example, since the mere assembly of evidence by one party is not work product, its adversary will be able to obtain that evidence by a proper notice for production. See _Zucker v. Sable, 72 F.R.D. 1, 3 (S.D.N.Y.1975)_. Yet the party that thus "piggybacks" on its opponent's efforts is not thereby liable for the opposing counsel's fees for time expended in collecting the evidence. Similarly, where a party incurs expenses obtaining documents under its control but in the actual possession of third-parties, it is not entitled to compensation beyond the cost of creating a copy for the demanding party. See _Biben v. Card, 119 F.R.D. 421, 429 (W.D.Mo.1987)_.

The same approach is appropriate here. Riddell shall produce copies of any transcripts it has of the tape recordings. Mr. Brooks shall pay for the creation of the copies but not for the original transcription.

The remaining questions concern the editing of the tapes, the identification of the time, date, and participants in each conversation, and the circumstances under which the tapes were produced to Riddell's counsel. *560 These are all issues best addressed through the deposition of Mr. Wingo.

_Diaries_

In his original submission, Mr. Brooks requested copies of Mr. Nederlander's diaries, schedules, and telephone message entries. Since that time, those documents have been disclosed. Riddell requested similar information from Mr. Brooks, and that is now being produced. This issue is therefore moot.

_Drafts of the Consulting Agreement_

Mr. Brooks has demanded production of drafts of the consulting agreement that he entered into with Riddell. Riddell has produced those drafts that it had previously sent to Mr. Brooks during negotiations, but it has withheld others pending a determination whether it will assert attorney-client privilege with respect to these drafts. If Riddell does conclude that these drafts are privileged and that the privilege will not be waived, it shall submit a privilege log to Mr. Brooks identifying the documents withheld.

_Fee Information_

On August 18, 1994, I directed Riddell to produce fee information requested by Mr. Brooks because it was relevant to an indemnity agreement between the parties. According to Mr. Brooks, the fee records produced by Riddell have been so heavily redacted that it is impossible to determine whether the time entries relate to work covered by the indemnification agreement. Riddell responds that time records produced by Mr. Brooks' counsel are similarly redacted. It also suggests that the disclosure of fee information be deferred.

It is too late in the day for Riddell to argue that the production of the attorney time records should be delayed. Disclosure was required by my August 18, 1994, order. Moreover, the fee records relate to one of the claims in chief asserted by Riddell, not to some collateral issue that could await determination of the main claims.

[14][15] The question of redaction is more difficult. Under federal common law, attorney fee arrangements, including the general purpose of the work performed, are not generally protected from

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

158 F.R.D. 555                                                                                           Page 8
158 F.R.D. 555, 31 Fed.R.Serv.3d 602

disclosure by the attorney-client privilege. *See Clarke v. American Commerce National Bank*, 974 F.2d 127, 129 (9th Cir.1992); *In re Grand Jury Witness (Salas and Waxman)*, 695 F.2d 359, 361 (9th Cir.1982).

However, correspondence, bills, ledgers, statements, and time records which also reveal the motive of the client in seeking representation, litigation strategy, or the specific nature of the services provided, such as researching particular areas of law, fall within the privilege. The burden of establishing that the attorney-client privilege applies to the documents in question rests with the party asserting the privilege.

*Clarke*, 974 F.2d at 129 (citations omitted). In this case, the privilege question appears to relate to substantive claims that will be decided under New York law, so state privilege principles would apply. Fed.R.Evid. 501. Nevertheless, with respect to the disclosure of attorney time records, New York privilege rules seem to coincide with the federal common law principles discussed above. *See Licensing Corp. of America v. National Hockey League Players Association*, 153 Misc.2d 126, 127-28, 580 N.Y.S.2d 128, 129 (Sup.Ct.N.Y.Co.1992).

Here, neither party has carried its burden of demonstrating that the redacted portion of the time records that it has disclosed are protected by the attorney-client privilege. Accordingly, counsel shall attempt to agree on a mechanism for providing information sufficient to advise the opposing party which issue each time entry relates to. If this is unsuccessful, each party shall make a formal motion for a protective order, setting forth why each redaction is justified by the attorney-client privilege. At the same time, copies of both the redacted and unredacted time records shall be submitted for my *in camera* review.

*Financial Information*

In an order dated July 25, 1994, I ordered Riddell to produce certain financial information for the years 1991 and 1992. Mr. Brooks complains that Riddell has not produced all such information; Riddell represents that it has. No further order is necessary*561 or appropriate until Mr. Brooks' attorney can identify with some greater specificity how Riddell's production may be incomplete.

*Weisman Deposition and Documents*

Riddell has commenced the deposition of a non-party witness, Robert D. Weisman. Mr. Weisman is Chairman of the MacGregor Sporting Goods Creditor's Committee (the "Committee"), which instituted a fraudulent conveyance suit against Riddell. Riddell contends that Mr. Brooks violated his obligations to it by assisting the Committee in that adversary proceeding. Riddell now seeks to compel Mr. Weisman to answer deposition questions and produce documents relating to Innovative Promotions ("Innovative"). Mr. Brooks, as Chairman of MacGregor, and Mr. Weisman, as Chairman of Innovative, had entered into a venture for the marketing of tennis racquets. Innovative has a claim against MacGregor in the bankruptcy proceeding. It is Riddell's theory that Mr. Weisman and Mr. Brooks entered into an improper agreement whereby Mr. Brooks would provide testimony favorable to Innovative in the bankruptcy proceeding in return for the Mr. Weisman's causing the Committee to bring a claim against Riddell.

Mr. Weisman opposes Riddell's application and moves pursuant to Rules 30(d)(3) and 45 of the Federal Rules of Civil Procedure for an order limiting the scope of the continued deposition and the document production. Mr. Weisman raises three basic arguments. First, he contends that the theory advanced by Riddell is not contained in the pleadings in this case, and much of the requested discovery is therefore irrelevant. Second, he argues that discovery in this case should not be permitted to circumvent a stay of discovery in the fraudulent conveyance proceeding. Finally, even if Riddell's discovery demands are otherwise proper, Mr. Weisman suggests that they are overbroad.

[16] Rule 26(b)(1) of the Federal Rules of Civil Procedure permits discovery of any information "relevant to the subject matter of the action." This phrase "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is *or may be* in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S.Ct. 2380, 2389, 57 L.Ed.2d 253 (1978) (emphasis added). Thus, the fact that Riddell's "quid pro quo" theory has not actually

been pled is not fatal to its discovery demands. Those demands relate to the general subject matter of this litigation and to a specific claim that Riddell may yet assert. Therefore, Mr. Weisman's first argument must fail.

[17] His second contention is likewise flawed. To the extent that there is a legitimate basis for pursuing discovery in this case, it is irrelevant that the same discovery may be stayed in the fraudulent conveyance action. These are two independent, if overlapping, actions, and a discovery stay in one has no effect on the other. In any event, the fraudulent conveyance action has been dismissed as time-barred, thus nullifying the stay of discovery in that proceeding.

Mr. Weisman's general objection to the breadth of Riddell's discovery requests has more merit. Testimony and documents touching on Mr. Brooks' involvement in Innovative's claim against MacGregor would certainly be relevant. However, Mr. Weisman's knowledge of the Innovative claim generally is beyond the scope of this litigation. So too are the details of Mr. Weisman's business or other relationships with Mr. Brooks apart from the Innovative claim. Both Mr. Weisman's deposition testimony and his production of documents shall be limited accordingly.

*Conclusion*

For the reasons set forth above, the discovery issues raised by the parties and by the non-party witness are resolved as follows:

1. Riddell's application to terminate the depositions of Robert Nederlander and Leonard Toboroff is denied, and these examinations shall resume promptly and proceed until completed.

2. Riddell shall produce copies of any tapes of conversations between Mr. Brooks and Mr. Wingo. It shall also provide copies of any transcripts that have been made of those tapes, with Mr. Brooks bearing the duplication costs. The costs of transcription *562 shall be borne by the party that has chosen to create the transcripts.

3. The application for an order directing Mr. Nederlander to produce copies of his diary entries is denied as moot.

4. Riddell shall produce all non-privileged drafts of the consulting agreement and a log of any drafts withheld as privileged.

5. If the parties fail to reach an agreement as to production of attorney time records, they shall each make a formal motion for a protective order and shall submit the time records to me for *in camera* review.

6. Mr. Brooks' application for production of further financial information from Riddell is denied without prejudice to renewal on the basis of more specific requests.

7. Mr. Weisman shall give testimony and provide documents limited to Mr. Brooks' involvement in Innovative's claim against MacGregor.

SO ORDERED.

S.D.N.Y.,1994.
Riddell Sports Inc. v. Brooks
158 F.R.D. 555, 31 Fed.R.Serv.3d 602

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.