UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DR SYSTEMS, INC., | Case No. 08cv669-H (BLM) |
| Plaintiff, | **ORDER (1) DENYING DR SYSTEMS'** |
| v. | **MOTION FOR PROTECTIVE ORDER** |
| | **AND (2) GRANTING IN PART AND** |
| EASTMAN KODAK CO., | **DENYING IN KODAK'S MOTION FOR** |
| Defendant. | **PROTECTIVE ORDER** |
| | [Doc. Nos. 99, 110] |
| And Related Counter-Claims | |

On July 9, 2009, DR Systems, Inc. ("DR Systems") moved this Court for a Protective Order under Federal Rule of Civil Procedure 26(b) to quash Eastman Kodak Company's ("Kodak") deposition notice for Leo Zuckerman, a shareholder and Board member of DR Systems. Doc. No. 99. Similarly, on July 14, 2009, Kodak filed a Motion for Protective Order and Motion to Quash DR Systems' deposition notices for Antonio Perez, Kodak's Chairman and Chief Executive Officer ("CEO"), and Peter Cody, Kodak's in-house Director of Patent Litigation and Vice President. Doc. No. 110. Subsequently, the parties timely opposed and replied to the respective motions. Doc. Nos. 116, 120, 121, 128. The Court took the matters under submission pursuant to Civil Local Rule 7.1(d)(1). Doc. Nos. 101, 108. Having reviewed the briefing submitted, and for the

reasons set forth below, DR Systems' motion is **DENIED** and Kodak's motion is **GRANTED IN PART** and **DENIED IN PART**.

## Background

On April 14, 2008, DR Systems filed a Complaint for declaratory judgment, asking the Court to declare Kodak's patent, U.S. Patent No. 5,414,811 (hereinafter "the '811 patent"),[1] invalid and to find that DR Systems did not infringe the '811 patent. Doc. No. 1. Kodak previously had mailed DR Systems a warning of possible infringement. Id. On May 7, 2008, Kodak answered and counterclaimed for declarations of the '811 patent's validity and DR Systems' infringement. Doc. No. 9. The current disputes arise from Kodak's Notice of Deposition for Leo Zuckerman, dated June 25, 2009 and DR Systems' Notices of Deposition for Peter Cody and Antonio Perez, both dated July 9, 2009. Doc. Nos. 99, 110.

## Legal Standard

### I. Scope of Discovery

The scope of discovery is defined by Federal Rule of Civil Procedure 26(b). Pursuant to that rule, litigants may obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense." Rule 26(b)(1). Relevant information for discovery purposes includes any information "reasonably calculated to lead to the discovery of admissible evidence." Id.

District courts enjoy broad discretion both to determine relevancy for discovery purposes, see Hallett v. Morgan, 296 F.3d 732, 751 (9th Cir. 2002), and to limit discovery to prevent its abuse. See Rule 26(b)(2) (instructing that courts may limit discovery where it is

---

[1]The '811 patent concerns technology for displaying digital images. Doc. No. 1.

"unreasonably cumulative or duplicative," or obtainable "from some other source that is more convenient, less burdensome, or less expensive," or where its burden or expense "outweighs its likely benefit").

**II. Motion for Protective Order**

Upon a showing of good cause, the Court "may issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Rule 26(c). "For good cause to exist, the party seeking protection bears the burden of showing specific prejudice or harm will result if no protective order is granted." <u>Phillips ex rel. Estates of Byrd v. General Motors Corp.</u>, 307 F.3d 1206, 1210-11 (9th Cir. 2002), <u>citing</u> <u>Beckman Indus., Inc. v. Int'l Ins. Co.</u>, 966 F.2d 470, 476 (9th Cir. 1992) (holding that "broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test"); <u>see also</u> <u>Blankenship v. Hearst Corp.</u>, 519 F.2d 418, 429 (9th Cir. 1975) (Under liberal discovery principles of the federal rules, those opposing discovery are required to carry a heavy burden of showing why discovery should be denied).

The court has wide discretion to determine what constitutes a showing of good cause and to fashion a protective order that provides the appropriate degree of protection. <u>Seattle Times Co. v. Rhinehart</u>, 467 U.S. 20, 36 (1984). However, courts should not bar a deposition "absent extraordinary circumstances" as such a prohibition would "likely be in error." <u>Salter v. Upjohn Co.</u>, 593 F.2d 649, 651 (5th Cir. 1979); <u>see also</u> <u>Blankenship</u>, 519 F.2d at 429; ("A strong showing is required before a party will be denied entirely the right to take a deposition."); <u>United States EEOC v. Caesars Entm't, Inc.</u>, 237 F.R.D. 428, 432 (D.Nev. 2006) ("As a general rule, courts will not grant protective orders that prohibit the taking of deposition testimony.").

3

**III. Apex Depositions**

As discussed above, a party seeking to prevent a deposition carries a heavy burden to show why discovery should be denied. Nevertheless, when a party seeks to take the deposition of an official at the highest level or "apex" of a corporation, the court may exercise its authority under the federal rules to limit discovery. WebSide Story, Inc. v. NetRatings, Inc., 2007 WL 1120567, *2 (S.D. Cal. Apr. 6, 2007); Celerity, Inc. v. Ultra Clean Holdings, Inc., 2007 WL 205067, *3 (N.D. Cal. Jan. 25, 2007) ("Virtually every court that has addressed deposition notices directed at an official at the highest level or "apex" of corporate management has observed that such discovery creates a tremendous potential for abuse or harassment.") (citing Mulvey v. Chrysler Corp., 106 F.R.D. 364 (D.C.R.I. 1985)).

In deciding whether to allow an apex deposition, courts often consider: (1) whether the high-level deponent has unique, non-cumulative knowledge of the facts at issue; and (2) whether there are other, less burdensome discovery methods. WebSideStory, 2007 WL 1120567, at *2; Celerity, 2007 WL 205067, at *3. "When a high-level corporate executive lacks unique or superior knowledge of the facts in dispute, courts have found that good cause exists to prohibit the deposition." WebSideStory, 2007 WL 1120567, at *2. "However, when a witness has personal knowledge of facts relevant to the lawsuit, even a corporate president or CEO is subject to deposition." Id.

### Discussion

**I. DR Systems' Motion for Protective Order**

DR Systems asks the Court to prohibit Kodak from deposing Mr. Leo Zuckerman because, as a shareholder and Board member of DR Systems, Mr. Leo Zuckerman is at the "apex" of the corporate management and does not

have "unique personal knowledge" of the issues in dispute in this litigation. Doc. No. 100 at 4. DR Systems further argues that any factual information Mr. Leo Zuckerman may possess would duplicate other discovery already obtained by Kodak and/or which could have been obtained through other, less-intrusive methods. Id.; Doc. No. 99 at 2-3. Finally, DR Systems asserts that the deposition notice is designed to harass DR Systems and does not seek relevant facts.[2] Doc. No. 99 at 2-3.

Kodak responds that Mr. Leo Zuckerman is "much more than an 'apex' witness - he is a percipient witness and controlling agent for DR on the topic of willful infringement." Doc. No. 118 at 2. Kodak argues that "even as an 'apex deponent' Kodak is entitled to depose Mr. Leo Zuckerman because he has "unique, personal knowledge that can be obtained only from him." Id. at 4. Kodak further argues that such knowledge is directly relevant to the central issues in this case, including willful infringement. Id. Therefore, Kodak asks that it be allowed to proceed with the properly noticed deposition of Mr. Leo Zuckerman. Id. at 6.

The Court finds that DR Systems has not met its burden for the issuance of a protective order. First, Kodak has established that Mr. Leo Zuckerman has direct, personal knowledge of facts relevant to this action. During his deposition, Mr. Chip Zuckerman, Mr. Leo Zuckerman's

---

[2]DR Systems also argues that the notice of deposition was improperly served because "litigation counsel for DR Systems is not authorized to accept service of any discovery for Leo Zuckerman." Doc. No. 100 at 2. "Under Rule 30(b)(1), it is well recognized that 'if the corporation is a party, the notice compels it to produce any 'officer, director or managing agent' named in the deposition notice. It is not necessary to subpoena such individual. The corporation risks sanctions-including default or dismissal-if the designated individual fails to appear.'" Cadent, Ltd. v. 3M Unitek Corp., 232 F.R.D. 625, 628 n.1 (C.D. Cal. 2005). Mr. Leo Zuckerman currently is one of DR Systems' directors. Doc. No. 100 at 2. As such, the Court finds that service on DR Systems' counsel was proper and reviews DR Systems' Motion for Protective Order on its merits.

08cv669-H (BLM)

son and DR Systems' Chief Financial Officer, testified that after receiving Kodak's October 2007 letter regarding the '811 Patent, he discussed it with several people, including Mr. Leo Zuckerman. Doc. No. 119 (Deposition of Charles Zuckerman at 22-23). While Mr. Chip Zuckerman testified that he "did not go into the detail [sic] of the claims with [Mr.] Leo Zuckerman," he acknowledged that he did discuss it with him and Mr. Leo Zuckerman did not direct him to conduct any investigation into the allegation. Id. at 41. While DR Systems quotes testimony that its Rule 30(b)(6) deponent did not discuss the investigation of Kodak's claims with Mr. Leo Zuckerman (doc. no. 120 at 22), it does not contradict Mr. Chip Zuckerman's testimony that a conversation occurred. As such, the Court finds that Mr. Leo Zuckerman has direct, personal knowledge of topics that are relevant to the claims and defenses at issue in this case.

DR Systems argues that even if Mr. Leo Zuckerman has such personal knowledge, the desired information can be obtained from "less burdensome" sources. While that may be true for some information, Mr. Chip Zuckerman was unable to provide specific details regarding their conversation and Mr. Leo Zuckerman's response. Moreover, the mere fact that one person testified about a conversation does not make any additional testimony about the conversation repetitive. As one court stated, "[t]he mere fact ... that other witnesses may be able to testify as to what occurred at a particular time or place does not mean that a high level corporate officer's testimony would be 'repetitive.' Indeed, it is not uncommon for different witnesses to an event to have differing recollections of what occurred." First National Mortgage Co. v. Federal Realty Investment Trust, 2007 WL 4170548, *3 (N.D. Cal. 2007).

///

08cv669-H (BLM)

Second, DR Systems is a small, family-run corporation. While neither party specifies the number of people on DR System's Board of Directors, Mr. Chip Zuckerman testified that Ms. Emma Zuckerman, Leo's wife and Chip's step-mother, is a member of the board, and two of Chip's brothers, Scott and Fred, have served as directors. Doc. No. 119 (Declaration of Lisa C. McCurdy at ¶ 5). Kodak has not deposed and is not seeking to depose any of these other family members, nor is it seeking to depose all of the board members. Doc. No. 118 at 3. Rather, Kodak appears to be targeting the individuals it believes possess personal knowledge of relevant facts. Id. Moreover, the Court notes that Kodak has deposed several of DR Systems' employees and managing agents, including two Rule 30(b)(6) witnesses. Doc. No. 99 at 2-3; see First Nat'l Mortgage Co. v. Fed. Realty Inv. Trust, 2007 WL 4170548, *2 (N.D. Cal. 2007) (allowing the depositions of high-level executives after depositions of lower-level employees suggested that they might have at least some relevant personal knowledge); Google v. Am. Blind & Wallpaper Factory, Inc., 2006 WL 2578277, *3 (N.D. Cal. 2006) (allowing deposition of corporate founder only after learning from 30(b)(6) witnesses that he may have relevant first hand information). These facts establish that Kodak's deposition notice is not designed to harass DR Systems, but to elicit personal knowledge from the deponent.

Because Kodak has deposed several other witnesses and completed all other discovery, the Court believes Kodak can limit questioning in a manner to avoid unreasonable duplication. See Kelly v. Microsoft Corp., 2008 WL 5000278, *2 (W.D. Wash. Nov. 21, 2008). Indeed, to safeguard against undue burden or repetition, the Court will impose a three hour time limit on the deposition. Id.

///

7

Accordingly, the Court finds that DR Systems has not shown that Kodak noticed Mr. Leo Zuckerman's deposition solely to "harass and annoy" DR Systems. Nor has DR Systems demonstrated that an examination of Mr. Leo Zuckerman would be unduly burdensome, cause specific harm, or result in prejudice. Rule 26(c); <u>Rivera v. Nibco, Inc.</u>, 364 F.3d 1057, 1063 (9th Cir. 2004); <u>Blankenship</u>, 519 F.2d at 429. Accordingly, DR Systems has failed to establish good cause for an order precluding the deposition of Mr. Leo Zuckerman and its motion is **DENIED.**

**II. Kodak's Motion for Protective Order**

Kodak asks the Court to prohibit DR Systems from deposing Antonio Perez, Kodak's Chairman and CEO, and Peter Cody, Kodak's in-house Director of Patent Litigation and Vice President. Doc. No. 113 at 2. Kodak argues that DR Systems noticed these depositions "solely in an effort to harass Kodak" and "in blatant retaliation against Kodak for having noticed the deposition of Mr. [Leo] Zuckerman." <u>Id.</u> at 4. Kodak further argues that the notices are "procedurally and substantively defective" and therefore should be quashed. <u>Id.</u> The Court will address each deponent below.

**a. Antonio Perez**

Kodak moves to quash the deposition notice issued to Mr. Perez because, as the Chairman and CEO of a multi-billion dollar company, Mr. Perez is an "apex" deponent who has "no connection to this litigation" or "relevant information of any kind." <u>Id.</u> Kodak asserts that unlike its request to depose Mr. Leo Zuckerman, there is no evidence that Mr. Perez has "percipient knowledge" relevant to this case as Mr. Perez "has not been identified in this litigation by any witness or in any document as having relevant information." <u>Id.</u> at 6.

///

DR Systems responds that it is entitled to depose Mr. Perez because Kodak "broadened the scope of discovery to uncover this exact same information from DR Systems" when it noticed Mr. Leo Zuckerman's deposition. Doc. No. 125 at 2. DR Systems suggests that Kodak has now made "what is or is not the proper conduct of the principal of an organization regarding claims and allegations of patent infringement" an issue in this case. Id. at 3. Therefore, DR Systems argues that

> it would be fundamentally unfair and prejudicial to DR Systems if this Court were to allow Kodak to depose the principal shareholder of DR Systems to discover his knowledge and actions related to this matter without allowing DR Systems to also discover the knowledge and actions of Kodak's principal, Mr. Perez.

Id. In effect, DR Systems' position is that it should be allowed to depose Mr. Perez if Kodak is allowed to depose Mr. Leo Zuckerman because "only through a direct comparison" of Mr. Leo Zuckerman's and Mr. Perez's knowledge and actions would a jury be able to "evaluate whether or not Leo Zuckerman's knowledge and actions were appropriate." Id.

Although the scope of discovery is broad, it is not unlimited. As explained above, the Court may act to limit discovery when a party seeks to depose an official at the "apex" of a corporation who lacks "unique or superior knowledge of the facts in dispute." WebSideStory, 2007 WL 1120567, at *2. The Court finds this to be the case here. Essentially, DR Systems argues that it is entitled to depose Mr. Perez because Kodak requested to depose Mr. Leo Zuckerman. The Court agrees with Kodak and finds that "[t]his is not a proper ground for requesting a deposition of any witness, let alone of an '[a]pex' witness." Doc. No. 130 at 2. Importantly, DR Systems has not established, nor can the Court discern, what "unique or superior knowledge" Mr. Perez may possess that would be relevant to this case. WebSideStory, 2007 WL 1120567, at *2 ("When a

08cv669-H (BLM)

high-level corporate executive lacks unique or superior knowledge of the facts in dispute, courts have found that good cause exists to prohibit the deposition."). Notably, Mr. Zuckerman is a controlling member of a small, family-run corporation, while Mr. Perez is the Chairman and CEO of a multi-billion dollar corporation. Thus, unlike Mr. Leo Zuckerman, Mr. Perez is likely "removed from the daily subjects of the litigation" and therefore lacks direct, personal knowledge of the claims and defenses at issue in this case. <u>Celerity</u>, 2007 WL 205067, at *3 (<u>citing</u> <u>Baine v. General Motors Corp.</u>, 141 F.R.D. 332, 334 (M.D. Ala. 1991). In fact, unlike Mr. Leo Zuckerman, who was identified as having relevant, personal knowledge by DR Systems' CFO, DR Systems has not identified any witness or document indicating that Mr. Perez has personal involvement in, or direct knowledge of, facts at issue in this case.

To the extent that DR Systems argues that it is entitled to depose Mr. Perez to assess the companies' respective "reasonableness," its argument is flawed. First, DR Systems has failed to point to a comparable claim or defense where Kodak's conduct or its "reasonableness" is at issue. Second, even if it is at issue, DR Systems has not identified Mr. Perez's involvement in that conduct or what "unique or superior" knowledge he may have regarding that conduct. Therefore, because Mr. Perez lacks direct, personal knowledge of the facts at issue in this case and the Court can discern no legitimate purpose for allowing his deposition to go forward, Kodak's Motion for Protective Order is **GRANTED** and the deposition notice of Mr. Perez is **QUASHED**.

### b. Peter Cody

DR Systems also seeks to depose Mr. Cody, Kodak's in-house Director of Patent Litigation and Vice President. Doc. No. 113 at 4. Kodak asks

10

08cv669-H (BLM)

that the deposition notice be quashed because "the only topic identified by DR for deposition concerns the letters sent by [Mr. Cody on behalf of Kodak] to DR in 2007 regarding DR's infringement" and "there is no legitimate reason for DR to notice Mr. Cody's deposition on this topic at this late date in the litigation, and with only five days' notice." Id. Kodak argues that DR Systems has "known about the 2007 letters and their authorship since receipt" and therefore had "numerous prior opportunities to seek information on [this] topic." Id. at 7. Kodak further argues that the fact that DR Systems waited to notice Mr. Cody's deposition until "less than one week before fact discovery was set to close and only after Kodak noticed the deposition of Mr. Zuckerman ... is indicative of the harassing nature of the notice." Id.

As DR Systems points out, Kodak does not argue that Mr. Cody does not have direct, personal knowledge or that his deposition would not yield relevant information. Doc. No. 125 at 4. Rather, Kodak takes issue with the short timing of the deposition notice and the fact that it was not issued until July 9, 2009, less than one week before fact discovery was set to close and after Kodak issued a deposition notice for Mr. Leo Zuckerman. Doc. No. 113 at 7-8. The Court finds that although the timing of the noticed deposition is less than ideal, it was not unreasonable in this situation because DR Systems did not realize it would have to depose Mr. Cody until it deposed Terrence O'Toole, a Rule 30(b)(6) deponent, on June 24, 2009. Doc. No. 125 at 4. DR Systems sought to depose Mr. O'Toole on the following topics related to its laches and unclean hands defenses: (25) the date when Kodak first learned of the Accused Products; (26) the facts and circumstances relating to Kodak's first knowledge of the Accused Products; (27) the date when Kodak first believed the Accused Products infringe the '811

patent; and (28) the facts and circumstances relating to Kodak's first belief that the Accused Products infringe the '811 patent. <u>Id.</u> When DR Systems inquired about these topics, Mr. O'Toole simply directed DR Systems to Mr. Cody's October 2007 letter:

> Q. Is it Kodak's position that Kodak first became aware of DR Systems' accused products at or around October of 2007?
>
> A. So the only information I have that I can relay is this document that's Peter Cody's letter.
>
>          \*     \*     \*
>
> Q. Other than reviewing the October 2007 letter and speaking to counsel, did you take any effort or make any effort in order to determine when Kodak first learned of DR Systems' products?
>
> A. I don't recall doing anything else.

<u>Id.</u> at 5.

"Courts generally refuse to allow the immediate deposition of a high level executive, often given the sobriquet 'apex deponent,'" before the testimony of lower level employees with more intimate knowledge of the case has been secured." <u>Upjohn</u>, 593 F.2d at 651 (granting protective order for executive where plaintiff had sought to depose the president of the company before deposing lower level executives). Here, before noticing Mr. Cody's deposition, DR Systems attempted to acquire this information from Mr. O'Toole, a lower level Kodak employee. However, Mr. O'Toole was not able to provide the requested information to DR Systems' satisfaction.[3] Moreover, both Mr. O'Toole's testimony and

---

[3]In its Reply, Kodak argues that DR already has deposed a Kodak witness, Mr. O'Toole, regarding the letters and therefore, other than to obtain privileged information, there is no need to depose Mr. Cody. Doc. No. 130 at 3. However, as stated above, "[t]he mere fact ... that other witnesses may be able to testify as to what occurred at a particular time or place does not mean that a high level corporate officer's testimony would be 'repetitive.' Indeed, it is not uncommon for different

the documentary evidence reveal that Mr. Cody has relevant, first-hand information regarding the defenses at issue in this case. Therefore, the Court finds that DR Systems is entitled to depose Mr. Cody about his non-privileged knowledge of the above-mentioned topics, specifically the letters he authored and sent to DR Systems regarding DR Systems' alleged infringement, including the October 2007 letter. Thus, Kodak's Motion for Protective Order and Motion to Quash Mr. Cody's deposition notice is **DENIED**. However, because the Court limits the deposition to those topics listed above, the Court imposes a three hour time limit on this deposition as well.

///

///

///

///

///

///

///

///

///

///

///

///

///

///

//

---

witnesses to an event to have differing recollections of what occurred." <u>First National Mortgage Co.</u>, 2007 WL 4170548, at *3. Certainly, Mr. O'Toole's knowledge of the letters is not the same as Mr. Cody's, the letters' author. Moreover, to the extent that DR Systems seeks privileged information, Kodak is free to object during the deposition.

08cv669-H (BLM)

## Conclusion

For the reasons set forth above, DR Systems' Motion for Protective Order is **DENIED** and Kodak's Motion for Protective Order and Motion to Quash the deposition notices of Mr. Perez and Mr. Cody is **GRANTED IN PART** and **DENIED IN PART**. Accordingly, the Court **ORDERS** as follows:

(1) DR Systems may not depose Mr. Perez;

(2) Kodak may depose Mr. Leo Zuckerman and DR Systems may depose Mr. Cody for no more than three (3) hours each;

(3) The depositions must take place within twenty (20) days of this Order at a time and place of the respective deponents' convenience; and

(4) The discovery deadline is extended twenty (20) days from the date of this order for the sole purpose of taking these two depositions.

**IT IS SO ORDERED.**

DATED: September 14, 2009

BARBARA L. MAJOR
United States Magistrate Judge

08cv669-H (BLM)