1
2
3
4
5
6
7
8          **UNITED STATES DISTRICT COURT**
9          **SOUTHERN DISTRICT OF CALIFORNIA**
10

11  | DR SYSTEMS, INC., a California Corporation, | CASE NO. 08-CV-669-H (BLM) |

DR SYSTEMS, INC., a California
Corporation,

    Plaintiff / Counterclaim-Defendant,

vs.


EASTMAN KODAK COMPANY, a New
Jersey Corporation,

    Defendant / Counterclaim-Plaintiff.

CASE NO. 08-CV-669-H (BLM)

**ORDER
(1) DENYING SUMMARY
JUDGMENT MOTIONS;
(2) GRANTING PARTIAL
SUMMARY ADJUDICATION;
AND
(3) DENYING MOTIONS TO
STRIKE**

    Before the Court are Plaintiff and Counterclaim-Defendant DR Systems, Inc.'s ("DR Systems") motions for summary judgment and partial summary judgment, and motions to strike.

    On September 21, 2009, DR Systems filed its motion for summary judgment of non-infringement. (Doc. No. 148.) Kodak filed its response in opposition on October 9, 2009. (Doc. No. 168.) On October 19, 2009, DR Systems filed its reply. (Doc. No. 182.) On September 21, 2009, DR Systems filed its motion for summary judgment of a finding of invalidity of the '811 patent as indefinite pursuant to 35 U.S.C. § 112. (Doc. No. 147.) Kodak filed its response in opposition on October 9, 2009. (Doc. No. 166.) On October 19, 2009, DR Systems filed its reply. (Doc. No. 183.) On September 21, 2009, DR Systems filed its motion

for summary judgment of a finding of invalidity of U.S. Patent No. 5,414,811 pursuant to 35 U.S.C. §§ 102 and 103.  (Doc. No. 151.)  Kodak filed its response in opposition on October 9, 2009.  (Doc. No. 171.)   On October 19, 2009, DR Systems filed its reply.  (Doc. No. 185.)  On the same day, DR Systems also filed its objections to and motion to strike Richard F. Ferraro's declaration in opposition to DR Systems' motion for summary judgment of invalidity under §§ 102 and 103.  (Doc. No. 186.)  On September 21, 2009, DR Systems filed its motion for partial summary judgment of no willful infringement of U.S. Patent No. 5,414,811.  (Doc. No. 146.)   On October 9, 2009, Defendant and Counterclaim-Plaintiff Eastman Kodak Company ("Kodak") filed its response in opposition.  (Doc. No. 164.)  On October 19, 2009, DR Systems filed its reply.  (Doc. No. 184.)  On September 21, 2009, DR Systems filed its motion to strike the expert report and deposition testimony of Jeffrey M. Silverman, M.D. (Doc. No. 149.)  Kodak filed its response in opposition on October 9, 2009.  (Doc. No. 161.)

The Court held a hearing on the matter on October 26, 2009.  Frederick Laney and Joseph Culig of Niro Scavone Haller & Niro, and Allison Goddard of Jaczko Goddard appeared on behalf of DR Systems.  Stephen Hankins and Paul Previde of Schiff Hardin LLP appeared on behalf of Kodak.  After the hearing, the Court issued a scheduling order setting deadlines for Kodak to file its opposition to DR Systems' motion to strike the Ferraro declaration, and for DR Systems to file its reply.  (Doc. No. 189.)  On October 28, 2009, Kodak filed its opposition to DR Systems' motion to strike the Ferraro declaration.  (Doc. No. 195.)  On October 30, 2009, DR Systems filed its reply in support of its motion to strike the Ferraro declaration.  (Doc. No. 197.)

For the reasons set forth below, the Court DENIES DR Systems' motions for summary judgment, GRANTS DR Systems' motion for partial summary judgment, and DENIES DR Systems' motions to strike.

///

///

///

///

**<u>Background</u>**

The '811 patent was filed on February 25, 1994 and issued on May 9, 1995.  ('811 patent.)  It is entitled "Method and Apparatus for Controlling Rapid Display of Multiple Images from a Digital Image Database" and claims a technology that decreases the time necessary for an electronic display device to sequentially display images in a database and allows for multiple images to be displayed and manipulated simultaneously.  Claims 1, 10, 15, 16, 17, 18 and 20 in the '811 patent are independent claims, each containing limitations referring to "image memories."  ('811 patent.)  Claims 2-9, 11-14, and 19 ultimately depend from the above-listed independent claims.

Defendant Eastman Kodak is the owner of U.S. Patent No. 5,414,811 ("the '811 patent") by assignment.  (Compl. ¶¶ 1, 10; Ex. A ['811 Patent].)  DR Systems first became aware of Kodak's '811 patent in October of 2007, when Kodak sent a letter to Dr. Reicher and Messrs. Porritt and Zuckerman of DR Systems.  (Doc. No. 145 at 6.)

DR Systems commenced this action on April 14, 2008 by filing a complaint for declaratory judgment of non-infringement and invalidity of U.S. Patent No. 5,414,811.  (Doc. No. 1.)  Kodak filed its answer and a counterclaim for patent infringement against DR Systems on May 7, 2008.  (Doc. No. 9.)  Kodak identified Dr. Jeffrey Silverman ("Dr. Silverman") and Mr. Richard F. Ferraro ("Mr. Ferraro") as experts on the issues of patent validity and infringement.

On January 8, 2009 and February 18, 2009, the Court conducted a claim construction hearing in this matter for the '811 patent.  The Court issued a claim construction order on May 22, 2009.  (Doc. No. 85.)  The matter is set for trial on February 5, 2010.

DR Systems has moved for partial summary judgment of no willful infringement, summary judgment of invalidity of the '811 patent as indefinite, invalidity because of anticipation and obviousness, and non-infringement.  DR Systems moved to strike Dr. Silverman's expert report and deposition testimony.  Kodak opposes the motions.   Kodak relies on the October 9, 2009 declaration of Mr. Ferraro, (Doc. No. 172), to oppose DR Systems' motion for summary judgment of invalidity pursuant to 35 U.S.C. §§ 102 and 103.

1   (Doc. No. 171.)  In its reply, DR Systems moves to strike the October 9, 2009 declaration of

2   Mr. Ferraro.  (Doc. No. 186.)

3         Kodak's response in opposition to DR Systems' motion for summary judgment of

4   invalidity pursuant to 35 U.S.C. §§ 102 and 103 asks the Court to grant summary judgment in

5   Kodak's favor that the Chang patent does not anticipate any Claim of the '811 patent.

6                          **I. <u>Summary Judgment Standard</u>**

7         Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil

8   Procedure if the moving party demonstrates the absence of a genuine issue of material fact and

9   entitlement to judgment as a matter of law.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

10  A fact is material when, under the governing substantive law, it could affect the outcome of

11  the case.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Freeman v. Arpaio</u>, 125

12  F.3d 732, 735 (9th Cir.1997).  A dispute is genuine if a reasonable jury could return a verdict

13  for the nonmoving party.  <u>Anderson</u>, 477 U.S. at 248.

14        A party seeking summary judgment always bears the initial burden of establishing the

15  absence of a genuine issue of material fact.  <u>Celotex</u>, 477 U.S. at 323.  The moving party can

16  satisfy this burden in two ways: (1) by presenting evidence that negates an essential element

17  of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to

18  establish an essential element of the nonmoving party's case on which the nonmoving party

19  bears the burden of proving at trial.  <u>Id.</u> at 322-23.  "Disputes over irrelevant or unnecessary

20  facts will not preclude a grant of summary judgment."  <u>T.W. Elec. Serv., Inc. v. Pacific Elec.</u>

21  <u>Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987).  Once the moving party establishes the

22  absence of genuine issues of material fact, the burden shifts to the nonmoving party to set forth

23  facts showing that a genuine issue of disputed fact remains.  <u>Celotex</u>, 477 U.S. at 322.  The

24  nonmoving party cannot oppose a properly supported summary judgment motion by "rest[ing]

25  on mere allegations or denials of his pleadings."  <u>Anderson</u>, 477 U.S. at 256.

26        When ruling on a summary judgment motion, the court must view all inferences drawn

27  from the underlying facts in the light most favorable to the nonmoving party.  <u>Matsushita Elec.</u>

28  <u>Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).  The Court does not make

credibility determinations with respect to evidence offered.  See T.W. Elec., 809 F.2d at 630-31 (citing Matsushita, 475 U.S. at 587).  Summary judgment is therefore not appropriate "where contradictory inferences may reasonably be drawn from undisputed evidentiary facts...."  Hollingsworth Solderless Terminal Co. v. Turley, 622 F.2d 1324, 1335 (9th Cir. 1980).

## II. Discussion

### A. Non-Infringement

Literal infringement of a claim is established when it is determined that "every limitation in the claim is literally met by the accused device."  Kahn v. General Motors Corp., 135 F.3d 1472, 1476 (Fed. Cir. 1998).  An accused device "that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention."  Warner-Jenkinson Co. v. Hilton Davis Chem. Co., 520 U.S. 17, 17 (1997).  "In determining whether there has been infringement, a two step analysis is required.  First, the claims must be correctly construed to determine the scope of the claims.  Second, the claims must be compared to the accused device."  Kahn, 135 F.3d at 1476.  In a motion for summary judgment of non-infringement, "[t]he movant bears the burden of demonstrating absence of all genuine issues of material fact, the district court must view the evidence in a light most favorable to the nonmovant and draw all reasonable inferences in its favor, and must resolve all doubt over factual issues in favor of the party opposing summary judgment."  SRI Int'l. v. Matsushita Elec. Corp., 775 F.2d 1107, 1116 (Fed. Cir. 1985).  Thus, to prevail against DR Systems' motion for summary judgment, Kodak needs to show that a genuine issue of material fact exists as to whether the accused device infringes one or more Claims of the '811 patent.  Id.

DR Systems alleges that it is entitled summary judgment of non-infringement because Kodak cannot prove that the accused products meet every limitation of the claims of the '811 patent.  (Doc. No. 148, Attach 1 at 4.)  Specifically, DR Systems argues that Kodak cannot establish that a triable issue of fact exists as to whether DR Systems' products have the

following claim limitations:  (1) image memories, (2) allocating or displaying, or (3) manipulating select images at the same time.  (Id.)

### 1. Image Memories

DR first argues that summary judgment of non-infringement is warranted because Kodak cannot prove that DR Systems' products have "image memories" as the Court has construed that term.  (Doc. No. 148, Attach. 1 at 4.)  The Court construed "image memories" as "[m]emory devices each capable of storing one image."  (Doc. No. 85 at 6.)  Independent Claims 1, 10, 15, 16, 17, 18 and 20 in the '811 patent each contain limitations referring to "image memories."  ('811 patent.)  Dependent Claims 2-9, 11-14, and 19 ultimately depend from these independent claims.  Therefore, all claims in the '811 patent contain the "image memories" limitation.

In opposition to the motion, Kodak presented screen shots of the accused DR Systems' products, pointing out the words "image memory" in DR Systems' software.  (Doc. No. 168 at 5.)  Kodak's expert, Richard F. Ferraro, concluded that the accused DR Systems' products have image memories as construed by the Court.  Mr. Ferraro observed the operation of the accused DR Systems products and analyzed the DR Systems source code  to determine whether the accused products use image memories.  (Decl. of Richard F. Ferraro in Opp. of DR Systems' Mot. for Summ. J. of Non-Infringement ("Ferraro Decl.") at ¶ 18.)  As a result of his analysis, Ferraro concluded that the accused products operate by reading image data from image files, and loading that image data "from one and only one image" into each image memory.  (Ferraro Decl. ¶ 22.)  Ferraro also opined that "[u]nique, dedicated, separate and distinct memory that stores the image data for one and only image is the 'image memory' recited in the asserted 20 claims."  (Id. ¶ 23.)

Viewing all inferences in favor of the nonmoving party, the Court concludes that a triable issue exists as to whether DR Systems' accused products have "image memories" and therefore infringe on all of the claims in the '811 patent.

///

///

### 2. Allocate or Display

DR next argues that summary judgment of non-infringement is warranted because DR Systems' products cannot be found to infringe Claims 1, 15, or 16 for two additional reasons: (1) the image memories are not assigned to respective screen sections; and (2) the image data that is displayed is not the same image data that is loaded into the system memory.  (Doc. No. 148, Attach 1 at 18.)  Claims 1, 15, and 16 of the '811 patent include allocating and displaying limitations.  ('811 patent.)  Specifically, the Court has construed the term "allocating at least two image memories containing image data to at least two sections of the screen respectively" in Claims 1, 15 and 16 as "assigning image memories to respective screen sections."  (Doc. No. 85 at 6.)  The Court has construed the term "displaying the image data from the at least two image memories on the respective screen sections" in Claim 1 as "displaying the image data contained in the image memories on the screen sections to which the image memories are assigned."  (Id.)  Claims 15 and 16 contain similar displaying limitations.  (Id. at 17, 19.)  Dependent Claims 2-9, ultimately depend from independent Claim 1.  Therefore, Claims 1-9, 15, and 16 contain the allocating and displaying limitations.

In its opposition, Kodak presents screen shots of the accused products that appear to show image data being assigned and displayed on respective sections of the accused product's screen.  (Doc. No. 168 at 11.)  Kodak states that DR Systems' products infringe because "multiple images are read from individual files, their image data is loaded into one image memory for each image, the images are assigned to screen sections, and then the images are displayed in their respective sections."  (Id.)  Furthermore, Kodak states that the source code in the accused DR Systems' products contains a "DisplayImage" function that "that makes it clear that the software is assigning a screen section to an image and then displaying that image in the screen section."  (Id. at 12.)

Viewing all inferences in favor of the nonmoving party, the Court concludes that a triable issue exists as to whether DR Systems' accused products perform the allocating and displaying limitations of Claims 1-9, 15, and 16 of the '811 patent.

///

**3. Manipulating Select Images at the Same Time**

Finally, DR Systems argues that summary judgment is appropriate because DR Systems' products do not apply the same manipulation to each selected image at the same time. (Doc. No. 148, Attach 1 at 22.) Claims 1, 15, and 16 of the '811 patent include the limitation "manipulating each of the selected images responsive to a single user command so that each selected image is manipulated in the same way at the same time." ('811 patent.) The Court construed this term to mean "manipulating each of the selected images so that the same manipulation is applied to each selected image at the same time without need for another user command." (Doc. No. 85 at 7.) Dependent Claims 2-9, ultimately depend from independent Claim 1. Therefore, Claims 1-9, 15, and 16 contain the manipulation of images at the same time limitation.

In its opposition, Kodak provides excerpts from the accused products' User Guide that refers to "simultaneous" manipulation of images. (Doc. No. 168 at 21-22.) For example, the guide describes product features such as "Magnifying Portions of Adjacent Images Simultaneously" and as "Roaming [aka panning] Adjacent Images Simultaneously." (Id. at 22.) Kodak also states that the source code for the accused product shows that manipulation for selected images begins at the same time, ends at the same time, and some instructions are executed once for all selected images. (Id. at 17.) Viewing all inferences in favor of the nonmoving party, the Court concludes that a triable issue exists as to whether DR Systems' accused products perform the manipulation of images at the same time limitation of Claims 1-9, 15, and 16 of the '811 patent.

For the reasons discussed above, a genuine issue of material fact exists as to the infringement of all claims in the '811 patent. Accordingly, the Court DENIES DR Systems' motion for summary judgment of non-infringement.

**B. Invalidity for Indefiniteness**

DR Systems next moves the Court to find Claims 10-14 and 17-19 of the '811 patent invalid as indefinite under 35 U.S.C. § 112, ¶¶ 2 and 6. (Doc. No. 147.) To prevail on its motion for summary judgment, DR Systems must prove, by clear and convincing evidence,

that the specification in the '811 patent lacks adequate disclosure of structure to be understood by one skilled in the art as able to perform the recited functions.  Intel Corp. v. VIA Technologies, Inc., 319 F.3d 1357, 1366 (Fed. Cir. 2003).  Issued patents are presumed valid, and "therefore the evidence to show invalidity must be clear and convincing."  Med. Instrumentation & Diagnostics Corp. v. Elekta AB, 344 F.3d 1205, 1220 (Fed. Cir.2003).  Under 35 U.S.C. § 112, ¶ 2, a patent "shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention."  A claim expressed in means-plus-function language "shall be construed to cover the corresponding structure. . . described in the specification and equivalents thereof."  35 U.S.C. § 112, ¶ 6.  A means-plus-function claim is invalid under 35 U.S.C. § 112, ¶ 2 if the patent specification does not adequately disclose structure to perform the claimed function. In re Donaldson Co., 16 F.3d 1189, 1195 (Fed. Cir. 1994) (en banc).

In cases involving computer-implemented inventions, "the structure disclosed in the specification [is required to] be more than simply a general purpose computer or microprocessor."  Aristocrat Techs. Australia Pty Ltd. v. Int'l Game Tech., 521 F.3d 1328, 1333 (Fed. Cir. 2008).   "[T]he corresponding structure for a § 112 ¶ 6 claim for a computer-implemented function is the algorithm disclosed in the specification." Harris Corp. v. Ericsson Inc., 417 F.3d 1241, 1249 (Fed. Cir. 2005).  "[A]lgorithms in the specification need only disclose adequate defining structure to render the bounds of the claim understandable to one of ordinary skill in the art."  AllVoice Computing PLC v. Nuance Commc'ns, Inc., 504 F.3d 1236, 1245 (Fed. Cir. 2007.)  The sufficiency of structure disclosure is assessed from the viewpoint of one skilled in the art.  Id. at1240.  Therefore, a means-plus-function claim is indefinite only "if a person of ordinary skill in the art would be unable to recognize the structure in the specification and associate it with the corresponding function in the claim." Id. at 1241.

DR Systems argues that Kodak's patent is invalid as indefinite under Aristocrat Technologies Australia Pty Ltd. v. Int'l Game Tech., 521 F.3d 1328 (Fed. Cir. 2008), because

the '811 patent does not disclose adequate structure.  (Doc. No. 147 at 8.)  Specifically, DR Systems argues that Kodak's proposed structure is nothing more than a restatement of the function as recited in the claims.  In other words, according to DR Systems, the recited structure simply describes the outcome, rather than the means for achieving that outcome.  In Aristocrat, the Federal Circuit affirmed a summary judgment that claims directed to a computerized game of chance requiring a "game control means" were invalid for being indefinite where as structure for performing the required functions the specification only disclosed a microprocessor with "appropriate programming," but did not disclose any algorithms specifically programmed into the microprocessor to carry out the functions.  521 F.3d at 1333-34.  In short, under Aristocrat, the structure must disclose more than a general purpose computer with "appropriate programming."

Following Aristocrat, the Federal Circuit affirmed an invalidity finding for failing to disclose adequate corresponding structure in Finisar Corp. v. DirecTV Group, Inc., 523 F.3d 1323, 1340-41 (Fed. Cir. 2008), and in Blackboard, Inc. v. Desire2Learn, Inc., 574 F.3d 1371, 1382-86 (Fed. Cir. 2009).  In Finisar, the Federal Circuit affirmed summary judgment that claims reciting a "database editing means ... for generating a hierarchically arranged set of indices ... and for embedding said indices in said information database" were invalid for indefiniteness.  The Circuit Court reasoned that the specification failed to disclose sufficient corresponding structure for the means-plus-function where it only disclosed that software performed the recited functions, and did not disclose the algorithms implemented by the software:

> The '505 patent discloses very little about the purported structure corresponding to this claim term.  For instance, column 6, lines 37-40, of the '505 patent recites that "software 132 (executed by CPU 130) generates a hierarchical set of indices referencing all the data in the information database 112 and embeds those indices in the information database."

Finisar, 523 F.3d at 1340.  The Federal Circuit agreed with the trial court that the disclosed

structure provided "nothing more than a restatement of the function, as recited in the claim." Id. (quoting Markman Order, 416 F. Supp. 2d 512, 519 (E.D. Tex. 2006)).

In Blackboard, the claims at issue had a limitation reciting "means for assigning a level of access to and control of each data file ..." Id. at 1382.  The patent owner argued before the trial court that "access control manager" represented the corresponding structure: "We suggest that the corresponding structure for [the function of assigning a level of access to and control of each data file] is the access control manager." Id. at 1383.  The corresponding structure described as "access control manager" performed the functions of the assigning means:

> Access control manager 151 creates an access control list (ACL) for one or more subsystems in response to a request from a subsystem to have its resources protected through adherence to an ACL.  Education support system 100 provides multiple levels of access restrictions to enable different types of users to effectively interact with the system (e.g. access web pages, upload or download files, view grade information) while preserving confidentiality of information.

Blackboard, 574 F.3d at 1382.  The Federal Circuit noted that "the 'access control manager' is simply an abstraction that describes the function of controlling access to course materials, which is performed by some undefined component of the system.  The ACM is essentially a black box that performs a recited function. But how it does so is left undisclosed." Id. at 1383.

Other courts applying Aristocrat have found that means-plus-function claims lack sufficient structure where the proposed structure merely references a computer, or a computer database.  See Simplification LLC v. Block Financial Corp., 593 F. Supp. 2d 700, 716-18 (D. Del. 2009) (finding that the claim lacked sufficient disclosure of structure as required for definiteness of patent where the disclosed corresponding structure for claims directed to an electronic tax preparation program was "a data processing system comprising a general purpose computer programmed with code segments to operate the general purpose computer"); Keithley v. Homestore.com, Inc., 636 F. Supp. 2d 978, 993-95 (N.D. Cal. 2008) (granting

summary judgment of invalidity for indefiniteness where the specification merely described the presence of a database and a server computer, and the functions the two components performed).

Unlike the patent owner in <u>Aristocrat</u>, in this case Kodak agrees that an algorithm is required.  Furthermore, unlike in <u>Finisar</u> and <u>Blackboard</u>, the algorithm in the '811 patent contains more than "a restatement of the function, as recited in the claim."  <u>Finisar</u>, 523 F.3d at 1340.  Claim 10 of the '811 patent contains a means-plus-function clause:

> control means responsive to the particular read command for reading the selected image data file and storing the corresponding image data in one of the image memories for subsequent display on the display device, wherein said control means is further responsive to said particular read command for reading one or more image data files sequentially adjacent to the selected image data file and storing the corresponding one or more sequentially adjacent digitized image data in one or more of the remaining image memories without displaying said sequentially adjacent data files until said subsequent user command is registered.

('811 patent, col. 15:3-15.)  Kodak's patent, as construed by the Court, discloses the following step-by-step process for implementing the control means function:

> (1) images are arranged in numerical order, such as the order in which the images appeared on film, or an order determined by the user and stored in an electrically erasable memory (8:48-58),
>
> (2) responsive to a read command, data for a first image is read,
>
> (3) image data for a first image is stored in a first image memory,
>
> (4) the first image is displayed,
>
> (5) data for a second sequentially adjacent image is read,
>
> (6) image data for the second image is stored in a second image memory, and
>
> (7) responsive to a subsequent user command, the second image is accessed from the

second image memory. (2:54-64)

(Doc. No. 85 at 13-14.)  Kodak contends that the step-by-step process is an algorithm that supplies sufficient structure for the control means limitation.  Kodak points out that its algorithm is not a mere restatement of the desired outcome, but a step-by-step protocol for achieving the claimed function.  Thus, it appears that the structure provided by the '811 patent exceeds the inadequate disclosures of the patents at issue in <u>Finisar</u> and <u>Blackboard</u>.

> Additionally, Kodak's expert, Mr. Ferraro, opined that:
>
> The algorithms that processors or microcontrollers use to perform the reading, loading, and arranging functions of the various "control means" claimed in the '811 Patent are the software equivalent of specific off-the-shelf parts.  There are any number of commercially available software routines that perform these functions when executed on a processor and would have been known to, and immediately recognized by, any person of ordinary skill in the art.

(Doc. No. 170, Ex. E ¶ 18.)  Viewing all inferences in favor of the nonmoving party, the Court concludes that a triable issue exists as to whether Kodak's patent discloses an algorithm which a person of ordinary skill in the art would understand to correspond to the control means function.  Accordingly, the Court DENIES DR Systems' motion for summary judgment of a finding of invalidity of the '811 patent as indefinite pursuant to 35 U.S.C. § 112.

**C.  Invalidity Pursuant to 35 U.S.C. §§ 102 & 103**

DR Systems moves for summary judgment of invalidity of Kodak's '811 patent on the grounds that the '811 patent is anticipated and rendered obvious by prior art reference U.S. Patent No. 5,027,110 (issued on June, 25, 1991 to Christina Chang, et al.) ("Chang patent"). In its opposition to DR Systems' motion for summary judgment, Kodak asks the Court to grant summary judgment in Kodak's favor that the Chang patent does not anticipate any claim of the '811 patent.

///

**1.  Anticipation of the '811 patent**

"A claim is anticipated only if each and every element as set forth in the claim is found, either expressly or inherently described, in a single prior art reference." Verdegaal Bros., Inc. v. Union Oil Co. of Cal., 814 F.2d 628, 631 (Fed. Cir. 1987).  Anticipation is a factual determination. Koito Mfg. Co., Ltd. v. Turn-Key-Tech., LLC, 381 F.3d 1142, 1149 (Fed. Cir. 2004) (reh'g and reh'g en banc denied, Oct. 27, 2004).  A party seeking to invalidate an issued patent as anticipated must overcome the presumption of validity by clear and convincing evidence. Nystrom v. TREX Co., Inc., 424 F.3d 1136, 1149 (Fed. Cir. 2005).  Accordingly, in order to prevail on its motion for summary judgment of invalidity pursuant to 35 U.S.C. § 102, DR Systems must prove by clear and convincing evidence that the Chang patent discloses each limitation of the '811 Claims.  Koito Mfg., 381 F.3d at 1149; RCA Corp. v. Applied Digital Data Sys., Inc., 730 F.2d 1440, 1444 (Fed. Cir. 1984).

DR Systems contends that the Chang patent anticipates each and every element of all twenty claims from the '811 patent, thus making the '811 patent invalid.  (Doc. No. 151 at 2.) DR Systems provides an element-by-element and claim-by-claim analysis of the '811 patent and asserts that each claim limitation is disclosed by the Chang patent.  (Id. at 4-24.)

In response, Kodak argues that the Chang patent does not disclose the following seven claim limitations: (1) the "image memories" limitation of Claims 1-20; (2) the "manipulating... at the same time" limitation of Claims 1-9 and 15-16; (3) the "manipulating" limitations of Claims 5 and 8; (4) the "rotating" limitations of Claim 9; (5) the "zooming over time" limitation of Claim 15; (6) the "panning over time" limitation of Claim 16; and (7) the "control means" limitation of Claims 10-14 and 17-19.  (Doc. No. 171.)  The Court notes that the "image memories" limitation is incorporated into every claim of the '811 patent.  Thus, if the Chang patent does not disclose "image memories," DR Systems' anticipation argument cannot succeed.

With respect to the first disputed limitation, the Court construed "image memories" as "memory devices each capable of storing one image."  (Doc. No. 85 at 6).  The parties agree

that the Chang patent discloses a display processor that is associated with a dynamic random access memory, or DRAM.  (See Doc. Nos. 171 at 5-6; 151 at 5-6.)  However, the parties disagree as to whether the DRAM recited by the Chang patent constitutes memory devices that are capable of storing one image.  (See Doc. Nos. 171 at 5-6; 151 at 5-6.)

DR Systems contends that the following passage demonstrates that the DRAM disclosed by the Chang patent constitutes a memory device capable of storing one image:

> Central processor 100 then sends to one of its graphic system processors, e.g., graphic processor 150-1, a command requesting the DRAM memory location at which the image is to be stored.  Responsive to receipt of the location, central processor 100 causes the image stored in the bus 105 bus buffer to be stored in the DRAM memory associated with graphic system processor 150-1 starting at the priorly identified location.

(Doc. No. 152, Ex. N, Chang Patent at col. 3:30-38).

In its opposition, Kodak argues that the DRAM disclosed by the Chang patent is not a memory device that is capable of storing one image.  (Doc. No. 171 at 5.)  According to Kodak, the disclosure of the Chang patent is limited to images being stored in the DRAM. (Doc. No. 172 at 12.)  Kodak disputes whether disclosure of DRAM, in and of itself, is sufficient disclosure of a memory device capable of storing one image.  (Doc. No. 171 at 7.) Thus, a factual dispute exists as to whether the DRAM disclosed by the Chang patent constitutes "image memories" within the meaning of the '811 Claims.

In ruling on DR Systems' motion for summary judgment, the Court must draw all factual inferences in the light most favorable to Kodak.  Matsushita, 475 U.S. at 587.  Here, there is a factual dispute over whether the DRAM disclosed in the Chang patent constitutes "image memories."  Accordingly, the Court DENIES Plaintiff DR Systems' motion for summary judgment of invalidity of the '811 patent for anticipation by the Chang patent. Because the Court concludes that the Chang patent does not disclose the first disputed limitation and therefore denies DR Systems' motion for summary judgment, the Court declines

to address whether the Chang patent discloses the remaining five disputed claim limitations. The Court declines sua sponte to grant summary judgment in Kodak's favor that the Chang patent does not anticipate any Claim of the '811 patent.

### 2. Obviousness of the '811 Patent

A claim is invalid for obviousness "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103(a). Obviousness is a legal conclusion based on factual findings, including: (1) the scope and content of the prior art; (2) the differences between the prior art and the claims at issue; and (3) the level of ordinary skill in the art. Finisar Corp. v. DirectTV Group, Inc., 523 F.3d 1323, 1338-1339 (Fed. Cir. 2008) (citing Graham v. John Deere Co., 383 U.S. 1, 17 (1966)). Secondary considerations of non-obviousness can be included in the invalidity analysis, such as failure of others, long-felt need, and commercial success. KSR Int'l Co. v. Teleflex Inc., 550 U.S. 398, 406-07 (2007). Obviousness must be proven by clear and convincing evidence. Takeda Chem. Indus., Ltd. v. Alphapharm Pty., Ltd., 492 F.3d 1350, 1355 (Fed. Cir. 2007). Summary judgment is appropriate if "the content of the prior art, the scope of the patent claim, and the level of ordinary skill in the art are not in material dispute, and the obviousness of the claim is apparent in light of these factors." KSR, 550 U.S. at 427.

DR Systems argues that the Chang patent renders obvious all twenty claims from the '811 patent. (Doc. No. 151 at 2.) DR Systems provides an element-by-element and claim-by-claim analysis of the '811 patent and asserts that each claim limitation is disclosed by the Chang patent. (Id. at 4-24.) This type of analysis is proper for determining anticipation. Verdegaal, 814 F.2d at 631. While "anticipation is the ultimate of obviousness," In re Baxter Travenol Labs., 952 F.2d 388, 391 (Fed. Cir. 1991), DR Systems has not carried its burden of showing invalidity of the '811 patent as anticipated by the Chang patent. DR Systems does not articulate why the claims of the '811 patent are obvious in light of the content of the Chang

patent, the scope of the '811 claims, and the level of ordinary skill in the art. <u>KSR</u>, 550 U.S. at 427.

Kodak disputes DR Systems' allegations of obviousness. (Doc. No. 171 at 10-11, 21.) Kodak argues that the Chang patent teaches away from the "at the same time" limitations of Claims 1-9 and 15-16. (Doc. No. 171 at 10-11.) According to Kodak, the Chang system lacks appropriate memory architecture and hardware for carrying out the "at the same time" limitation. (<u>Id</u>. at 11.) In addition, Kodak contends that the "control means" of Claims 10-14 and 17-19 is not rendered obvious by the disclosure of the Chang patent. (Doc. No. 171 at 21.) Kodak argues that the prior art discloses a system that immediately displays images without a subsequent use command, which does not render the "control means" limitation obvious. (<u>Id</u>.)

Thus, there is a factual dispute over whether the '811 patent is obvious in light of the Chang patent. In ruling on DR Systems' motion for summary judgment, the Court must draw all factual inferences in the light most favorable to Kodak. <u>Matsushita</u>, 475 U.S. at 587. Accordingly, the Court DENIES Plaintiff DR Systems' motion for summary judgment of invalidity of the '811 patent as obvious in view of the Chang patent.

**D. Willful Infringement**

DR Systems moves for partial summary judgment of no willful infringement, arguing that facts in the record do not support Kodak's contentions that DR Systems engaged in objectively reckless behavior. In its opposition, Kodak argues that the investigation of the '811 patent performed by DR Systems was cursory, and thus could not provide DR Systems with a reasonable basis for a belief of non-infringement.

"[T]o establish willful infringement, a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." <u>In re Seagate Technology, LLC</u>, 497 F.3d 1360, 1371 (Fed. Cir. 2007). As a threshold matter, the patentee must make a showing of "objective recklessness," and if this standard is satisfied, the patentee must also demonstrate that this

objectively-defined risk was "either known or so obvious that it should have been known to the accused infringer." Id. While the accused infringer no longer has an affirmative obligation to obtain opinion of counsel, this fact may be considered in the totality of circumstances to assess whether any infringement was willful. Broadcom Corp. v. Qualcomm Inc., 543 F.3d 683, 699 (Fed. Cir. 2008).

Here, Kodak has not presented any evidence that DR Systems knew about the '811 patent prior to receiving a letter from Kodak in October, 2007. DR Systems submitted testimony that it was not aware of the '811 patent prior to October, 2007. (Charles Zuckerman Dep., DR Systems Rule 30(b)(6) Witness at 18:1-3.) After DR Systems first learned of Kodak's patent infringement allegations, it immediately conducted a technical investigation, and as a result of the investigation formed its belief that the '811 patent was not infringed by any DR Systems' product. (Doc. No. 145 at 7-8.) DR Systems' Chief Financial Officer, Mr. Charles Zuckerman, and Kent Curtis, DR Systems' Vice President and Chief Operating Officer, became involved in investigating the patent. (Doc. No. 170, Hankins Decl., Ex. L, at 202:16-18.) Charles Zuckerman, testified that to investigate the patent,

> DR Systems reviewed the patent, reviewed the file history, reviewed Chang. Mr. Curtis and myself went through the patent. Mr. Curtis advised me on technical information about the patent and about our products. We checked additional technical information with Dale Seegmiller. And we had a reasonable basis to assume that we were not infringing on the '811 patent.

(Charles Zuckerman Dep., DR Systems Rule 30(b)(6) Witness at 23:12-18.) Mr. Curtis and Mr. Zuckerman analyzed the patent "claim by claim and then element by element." (Doc. No. 181, Attach. 1, Ex. X, Kent Curtis Dep. at 119:1-2.) Mr. Curtis also reviewed and analyzed prior art patents, including the Arenson, Chang, and Taffe, in connection with the '811 patent claims. (Id. at 41:13-19.)

Kodak argues that DR Systems' investigation was not conducted by a 'technical executive' of the company. (Doc. No. 164 at 6.) However, there is sufficient evidence in the

record that DR Systems involved qualified staff in its investigation.  Mr. Curtis's duties at DR Systems included "managing the project management, development, engineering, and production operations organizations and the information technology group," and he also had served as the head of software development group for DR Systems.  (Doc. No. 181, Attach. 1, Ex. X, Kent Curtis Dep. at 29:22-25, 30:8-9.)  Additionally, Mr. Curtis was familiar with source code and had written code for some of the DR Systems' products.  (Doc. No. 181, Attach. 1, Ex. Z, Kent Curtis Dep. at 249:24-250:19.)

Finally, Kodak argues that DR Systems' failed to obtain an opinion letter from a lawyer regarding the alleged infringement.  This factor, as compared to the totality of circumstances surrounding this case, does not weigh in favor of Kodak's argument that DR Systems' investigation was inadequate.

In sum, Kodak has not presented sufficient facts to support a finding that DR Systems acted despite an objectively high likelihood that its actions constituted infringement of a valid patent, and this objectively defined risk was known, or should have been known, to DR Systems.  In re Seagate Technology, LLC, 497 F.3d at 1371.  Accordingly, the Court GRANTS  DR Systems' motion for partial summary judgment of no willful infringement.

**E.  DR Systems' Motion to Strike Dr. Silverman's Expert Report and Testimony**

DR Systems moves to strike the expert report and testimony of Dr. Silverman relied upon by Kodak pursuant to Federal Rule of Evidence 702.  (Doc. No. 149.)  DR Systems argues that Dr. Silverman's opinions are "fatally defective," "insufficiently reliable," and "in no way helpful to the trier of fact."  (Id. Attach 1 at 2.)  Specifically, DR Systems argues that Dr. Silverman (1) cannot provide a reliable expert opinion as to the relevant market or PACS industry or opine as to the commercial viability of PACS products; (2) does not cite specific facts or data on which his opinions rely; (3) fails to articulate a theory or technique relied on in forming his opinions.

Expert testimony must meet the standards of Federal Rule of Evidence 702, which requires: (1) that the testimony is based on sufficient facts or data; (2) that the testimony is the

product of reliable principles and methods; and (3) that the witness applied the principles and methods reliably to the facts of the case.  Fed. R. Evid. 702.  The issue of expert testimony admissibility is left to the trial judge and reversed only for abuse of discretion.  See Gen. Elec. Co. v. Joiner, 522 U.S. 136, 141 (1997).

Daubert v. Merrell Dow Pharmaceuticals, Inc. imposed a gatekeeping obligation on trial judges to engage in objective screening designed to ensure that scientific evidence that is put before the jury "is not only relevant, but reliable." Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589 (1993).  The Supreme Court in Daubert listed four nonexclusive factors that a trial court might, in the exercise of its discretion, consider to assess reliability: 1) whether a theory or technique can be tested; 2) whether it has been subjected to peer review and publication; 3) the known or potential error rate of the theory or technique; and 4) whether the theory or technique enjoys general acceptance within the relevant scientific community. Id. at 593-94.

In Kumho Tire Co. Ltd. v. Carmichael, the Supreme Court revisited admissibility of expert testimony and emphasized that trial judges are entitled to broad discretion, and should not mechanically apply the Daubert factors to testimony, scientific or otherwise, as if the factors were a "definite checklist or test." 526 U.S. 137, 150-51 (1999).  Instead, the gatekeeping must be tailored to the facts of each case, and a judge should apply the Daubert factors "where they are reasonable measures of the reliability of expert testimony." Id. at 150, 152.  Not only must the trial court be given broad discretion to decide whether an expert's testimony is reliable, it "must have the same kind of latitude in deciding how to test an expert's reliability." Id. at 152.

In this case, Kodak retained Dr. Silverman to provide expert opinions on Picture Archiving and Communications Systems (PACS) systems and particular features that are important to users of such systems.  Dr. Silverman is an experienced radiologist who has worked with PACS for over ten years.  (Doc. No. 170, Ex. P at 3.)  Dr. Silverman is also a member of a group of physicians responsible for making purchasing decisions regarding PACS

systems. (Id.) Dr. Silverman has experience working with various functions of PACS systems, including manipulation of multiple images, prefetching of a series of images, and creation of key images and related reports. (Id.) His specialized knowledge can assist the trier of fact to understand the use of PACS by the radiology personnel. Exercising its discretion, the Court concludes that Dr. Silverman's report and testimony satisfies the requirements of Rule 702. Accordingly, the Court DENIES DR Systems' motion to strike the expert report and deposition testimony of Dr. Silverman.

**F. DR Systems' Motion to Strike Mr. Ferraro's Declaration**

On October 19, 2009 DR Systems filed its objection to, and motion to strike Mr. Ferraro's declaration. (Doc. No. 186.) On October 28, 2009, Kodak filed its opposition to DR Systems' motion to strike. (Doc. No. 195.) On October 30, 2009, DR Systems' filed its reply in support of its motion to strike Mr. Ferraro's declaration. (Doc. No. 197.)

DR Systems argues that the October 9, 2009 declaration contains "entirely new opinions" which were not previously disclosed in Mr. Ferraro's reports. (Id. at 3.) DR Systems argues that Kodak cannot show that the disclosure of the allegedly new opinions was justified, because the October 9, 2009 declaration does not indicate whether the opinions in it were formed in response to DR Systems' expert testimony. (Id. at 8.) In its opposition, Kodak argues that Mr. Ferraro's declaration contains further explanations of his previously disclosed opinions. (Doc. No. 195 at 4.) Kodak also argues that any new material in the Ferraro declaration is responsive to the new specific arguments disclosed by DR Systems for the first time in its motion for summary judgment of invalidity under §§ 102 and 103. (Id.) DR Systems' reply alleges that Kodak should have disclosed its contentions regarding the prior art references cited by DR Systems in response to several contention interrogatories. (Doc. No. 197 at 2.)

Federal Rule of Civil Procedure 26(a)(2)(B) requires that all expert testimony be accompanied by a written report containing "a complete statement of all opinions the witness will express and the basis and reasons for them," as well as the data or other information

considered by the witness in forming them, and any exhibits that will be used to summarize or support them.  Fed. R. Civ. P. 26(a)(2)(B).  The Ninth Circuit uses a five-factor test to determine whether evidence should be excluded as a sanction: 1) the public's interest in expeditious resolution of litigation; 2) the court's need to manage its docket; 3) the risk of prejudice to the defendants; 4) the public policy favoring disposition of cases on their merits; 5) the availability of less drastic sanctions.  Wendt v. Host Intern., Inc., 125 F.3d 806, 814 (9th Cir. 1997).  Exclusion of testimony for failure to make required disclosure should only be imposed if the party seeking exclusion suffered some prejudice.  See Pfingston v. Ronan Eng'g Co., 284 F.3d 999, 1005 (9th Cir. 2002).

Using its discretion, the Court declines to strike the declaration under the totality of circumstances in this case.  To the extent the declaration allegedly identifies previously undisclosed opinions by the expert, the Court directed the parties to meet and confer regarding scheduling a deposition of Mr. Ferraro.  (Doc. No. 189 at 2.)  Additionally, public policy reasons weigh in favor of deciding the matter on the merits, rather than through imposition of evidentiary sanctions.  See Wendt, 125 F.3d at 814.  Accordingly, the Court DENIES DR Systems' motion to strike the declaration of Richard F. Ferraro in opposition to DR Systems' motion for summary judgment of invalidity under §§ 102 and 103.

**Conclusion**

For the foregoing reasons, the Court

(1) DENIES DR Systems' motion for summary judgment of non-infringement;

(2) DENIES DR Systems' motion for summary judgment of a finding of invalidity of U.S. Patent No. 5,414,811 as indefinite pursuant to 35 U.S.C. § 112;

(3) DENIES DR Systems' motion for summary judgment of a finding of invalidity of U.S. Patent No. 5,414,811 pursuant to 35 U.S.C. §§ 102 and 103;

(4) GRANTS DR Systems' motion for partial summary judgment of no willful infringement of U.S. Patent No. 5,414,811;

1

(5) DENIES DR Systems' motion to strike the expert report and deposition testimony

2

of Dr. Silverman; and

3

(6) DENIES DR Systems' motion to strike the October 9, 2009 declaration of Mr.

4

Ferraro.

5

**IT IS SO ORDERED.**

6

DATED: November 9, 2009

7

8

_____

9

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28